STATE of Utah, Plaintiff and Respondent,

v.

Don Wesley COLE, Defendant and Appellant.

No. 18819.

Supreme Court of Utah.

Nov. 17, 1983.

Robert M. McRae, Leon Dever, Vernal, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant appeals his convictions of possession of controlled substances with intent to distribute [1] and possession of a dangerous weapon by a convicted felon,[2] alleging as error the denial of his motion to suppress evidence seized before and after his arrest.

On December 28, 1980, an employee of the local Safeway Store called Vernal city police and reported that a person she considered suspicious had just left the store after exchanging $1,000 worth of small denomination bills for $100 and $50 bills. She reported that the person had departed in a pickup truck with no visible license plates or registration. The Vernal police located the described vehicle outside a local restaurant and determined that a person resembling the "suspicious" person was eating inside with a companion. Police then staked out the restaurant. After approximately 30 minutes, during which time defendant came out to the vehicle at least once and returned to the restaurant, defendant Cole and his companion, Herbie Bell, exited the restaurant, got into the vehicle and drove away. Police stopped the vehicle for a moving traffic violation almost immediately and asked the occupants to get out. One officer gave *Miranda* warnings to the passenger Bell and began questioning him about the currency exchange. Another officer, Officer Free, questioned the defendant concerning the lack of registration or plates on the vehicle. Defendant was not given a *Miranda* warning at that time.

Free advised Cole that he intended to impound the vehicle because of the lack of

---

**1.** In violation of U.C.A., 1953, § 58–37–8.

**2.** In violation of U.C.A., 1953, § 76–10–503.

valid registration and that, pursuant to departmental policy, an inventory would be taken of the contents of the vehicle. Cole offered to waive, in writing, the officers' liability for the contents of the truck. Free refused, but told defendant that he and Bell could remove any of their personal belongings that they did not want impounded with the vehicle. Cole removed some clothing and other personal articles from the truck and handed them to Bell.

Apparently simultaneously, the officers began their inventory. At some point during that process, an officer discovered a marijuana bong under the seat of the vehicle. The bong had marijuana residue on it. Free told defendant that if he would turn over any marijuana he had he would not be arrested for a controlled substances violation. Cole subsequently turned over 12 bags of marijuana to Free and was not arrested.

As defendant was removing personal items from the truck, Free twice asked him if there were any firearms in the truck; Cole twice replied no. Free subsequently spotted a leather pistol case half concealed in some clothing that defendant was removing. At that time, the other officers were inventorying the vehicle and had their backs to Cole. Free, concerned for the other officers' safety and suspicious because of defendant's apparent lies concerning firearms, took the case from defendant, opened it and found a 9mm Colt pistol with eight rounds in the magazine. Free then asked Cole if he had ever been convicted of a felony. Cole replied that he had. Cole claims that he also told Officer Free that the conviction for burglary was as a juvenile and therefore not a felony. Free claims that Cole did not tell him that fact until later, but he didn't recall exactly when Cole so informed him.

In any event, Free arrested Cole for being a convicted felon in possession of a firearm and for possession of marijuana seeds, found during the vehicle inventory, that had not been surrendered to the police. Another officer retrieved Cole's knapsack and men's purse from Bell, saying that Cole's personal items would have to accompany him to jail. At the jail, pursuant to departmental policy, the bags were inventoried and found to contain, among other things, marijuana, hashish, LSD and cocaine. Defendant was then charged with four counts of possessing controlled substances with the intent to distribute for value, in addition to the weapons violation.

Defendant made several motions to dismiss and to suppress all evidence seized prior to (firearm) or after (drugs) defendant's arrest, all of which were denied. Defendant then stipulated to the fact that the evidence had been taken from a search of his vehicle and his person. Defendant did not stipulate to the disputed facts upon which his motions to suppress were premised. The judge thereafter found defendant guilty of both the weapons violation and the controlled substances violations and sentenced him.

On appeal, defendant claims that the trial court erred in denying his motions to suppress both the gun and the controlled substances in violation of his Fourth and Fourteenth Amendment rights because: (1) the traffic stop was a pretext to search for evidence of a crime; (2) the warrantless seizure of the firearm was not justified; (3) there was not sufficient probable cause to arrest defendant for being a felon in possession of a firearm; (4) there was no justification for police repossession of defendant's personal items after his arrest.

It is important to note at the outset that this Court will not disturb the ruling of a trial court on questions of admissibility of evidence or on issues of fact relevant to that admissibility unless it clearly appears that the lower court was in error.[3]

I

Defendant first contends that the traffic stop was a pretext to search for evidence of a crime. The facts do not bear this out.

**3.** *State v. Tuttle,* 16 Utah 2d 288, 399 P.2d 580 (1965).

The police, after being informed that a vehicle was being operated without registration or plates, properly sought out the vehicle and waited to determine who the driver was. When defendant got in and drove the vehicle away, police stopped it.[4]

 Stopping a vehicle and detaining its occupants constitute a seizure within the meaning of the Fourth and Fourteenth Amendments.[5] However, a stop of a vehicle for lack of registration does not constitute an *unreasonable* seizure under the strictures of the Fourth Amendment if there is at least an articulable and reasonable suspicion that the vehicle is not registered.[6] Here there was clear probable cause to stop the vehicle that defendant was driving since there was no visible registration or plates. The police not only had a right to make the stop, they had a duty to do so.

Once the vehicle had been stopped, the police questioned defendant to ascertain whether the vehicle was properly registered. When defendant could not produce valid registration, the police properly impounded the vehicle.[7] The police did not arrest defendant at that time nor did they attempt to search the person of defendant or the vehicle. In fact, after informing defendant that the vehicle was going to be impounded and that an inventory search of the vehicle would be done pursuant to departmental policy,[8] the police allowed Cole to take any personal items he chose from the vehicle prior to the inventory. Had the police been searching for evidence of a crime, there is no rationale that could explain this police behavior. In addition, during the inventory, evidence of a controlled substance violation was observed in the form of a bong with marijuana residue. The police not only did not use this evidence to justify a further search, they did not then arrest defendant. Had the police stopped the vehicle as a pretext to search for evidence of a crime, there is no logical explanation for the officers' declining to arrest defendant when clear evidence of a crime manifested itself during a proper inventory search.

The trial judge clearly had substantial evidence before him to justify his refusal to suppress evidence on the basis of pretext and we will not disturb that ruling.

## II

Defendant next contends that the warrantless seizure of the gun was not justified by any exception to the warrant requirement.

 Warrantless seizures and searches are per se unreasonable unless the exigencies of the situation justify an exception.[9] However, objects within the plain view of an officer from a position where he is entitled to be are not the subject of an unlawful search.[10] In this case, Officer Free was clearly where he had a right to be. He was standing on a public street following a rightful traffic stop waiting for the inventory of the vehicle to be completed. Defendant himself put the gun case within the view of the officer when he removed the gun from the vehicle. Although it appears that defendant was attempting to conceal the gun, he did not succeed and an officer is not required to avert his eyes from that which is put before him.[11]

---

4. Pursuant to U.C.A., 1953, § 41–1–18.

5. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979).

6. *See id.*

7. Pursuant to U.C.A., 1953, § 41–1–115.

8. *See, e.g., South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Romero,* Utah, 660 P.2d 715 (1983); *State v. Crabtree,* Utah, 618 P.2d 484 (1980).

9. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *See also State v. Romero, supra* n. 8; *State v. Lee,* Utah, 633 P.2d 48 (1981).

10. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *State v. Lee, supra* n. 9.

11. *See State v. Folkes,* Utah, 565 P.2d 1125 (1977).

■ The subsequent seizure of the gun case from defendant was reasonable under the *Terry*[12] standard. In *Terry*, it was said that the test of the reasonableness of a particular warrantless search for or seizure of a weapon was an objective one: "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"[13] The Court went on to say that if an officer believes himself or others to be in danger, he can take necessary measures to neutralize that threat of harm, including seizing a weapon.

Here the officer clearly had reason to be suspicious of defendant. The officer had asked defendant twice if there were any firearms in the vehicle and defendant had said no. Defendant then removed a gun case from the vehicle, apparently attempting to conceal it. Officer Free testified that at that point he feared for the safety of the other officers who were inventorying the vehicle's contents and whose backs were to defendant. Therefore, he seized the gun case. Under the *Terry* standard, the officer's protective seizure was clearly justifiable.

Defendant, however, further contends that even if the seizure of the gun case was justifiable, he had a reasonable expectation of privacy in its contents; thus, the warrantless search of the case violated his Fourth Amendment rights.

■ Defendant's argument cannot prevail. As the United States Supreme Court said in *Arkansas v. Sanders:*[14] "[S]ome containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance."[15] In interpreting this phrase, the Court in *Robbins v. California*[16] said that it is an exception that is "little more than another variation of the 'plain view' exception, since, if the distinctive configuration of a container proclaims its contents, the contents cannot fairly be said to have been removed from a searching officer's view."[17]

In attempting to counter the *Sanders* exception, defendant relies on *U.S. v. Rigales.*[18] *Rigales* is easily distinguishable. In *Rigales,* the officer found several bullets after a pat-down search of the arrestee and suspected a gun must be nearby. He looked into the automobile and saw a zippered leather case resembling a brief case, with a bulge in it, lying on the floor. The officer seized the case and opened it. In ruling that the gun found in the case should have been suppressed as evidence at trial, the court noted that the officer had testified that the case was not a gun case and that there was no indication that the bulge resembled a gun. Therefore, the court concluded that it was unable to find that the contents of the case could be inferred from its outward appearance, and the exception set forth in the *Sanders* footnote did not apply.

■ In the case at hand, testimony indicated that the case seized by the officer *was* a gun case. By its distinctive configuration, it indicated its contents. Accordingly, we hold that defendant did not have a reasonable expectation of privacy in the contents of the case and that after it was seized it was reasonable for the officer to open it without a warrant.[19]

12. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

13. *Id.* 392 U.S. at 21–22, 88 S.Ct. at 1879–81.

14. 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

15. *Id.* 442 U.S. at 764 n. 13, 99 S.Ct. at 2593.

16. 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981).

17. *Id.* 453 U.S. at 427, 101 S.Ct. at 2846.

18. 630 F.2d 364 (5th Cir.1980).

19. *See State v. McGregor,* Or.App., 643 P.2d 1315 (1982). *See also State v. Riley,* Or., 402 P.2d 741 (1965); *State v. Day,* Wash.App., 503 P.2d 1098 (1972).

## III

Defendant further contends that his arrest for being a convicted felon in possession of a firearm [20] was made without probable cause and that he should have been given a *Miranda* [21] warning prior to being asked whether he had ever been convicted of a felony.

U.C.A., 1953, § 77–7–2(2) gives a police officer authority to make a warrantless arrest "[w]hen he has reasonable cause to believe a felony has been committed and has reasonable cause to believe that the person arrested has committed it."

Reasonable cause for arrest without a warrant was defined by this Court in *State v. Hatcher:* [22] "The determination should be made on an objective standard: whether from the facts known to the officer, and the inferences which fairly might be drawn therefrom, a reasonable and prudent person in his position would be justified in believing that the suspect had committed the offense." [23]

In the instant case, there was reasonable cause to arrest Cole. Defendant had a gun in his possession that he had denied having and had attempted to conceal. When asked by a suspicious Officer Free if he had ever been convicted of a felony, defendant replied that he had. On these facts, any person of reasonable caution would be justified in believing that defendant had committed the crime of being a convicted felon in possession of a firearm.

Defendant contends, however, that he also told Free the conviction was as a juvenile, which would vitiate the felony. Free claimed that he was not told this fact until some time later, after the arrest. This conflicting testimony was resolved in the State's favor at the preliminary hearing. We will not disturb a ruling on issues of fact bearing upon the admissibility of evidence unless there was clear error by the court below. [24] In this case, there is no evidence of such error.

Defendant also maintains that he should have been given a *Miranda* warning prior to being asked whether he had been convicted of a felony.

In *Miranda,* the United States Supreme Court set forth rules of police procedure applicable to custodial interrogation, one of which requires that a person be informed of his right to remain silent prior to interrogation. That warning is a prerequisite to the admissibility of any statement made by a defendant during custodial interrogation. [25]

Custodial interrogation means questioning initiated by the police after a person has been taken into custody or otherwise deprived of his freedom in any significant way. [26]

In the instant case, there is no indication that defendant's freedom to depart was restricted in any way. The officers had told defendant he was free to go and to take any of his belongings with him. Defendant was gathering these together in preparation for leaving and was free to leave at any time. Even after the officer had confirmed that the defendant had a firearm, no restrictions were put on defendant's freedom.

Such a noncustodial situation is not converted to one in which *Miranda* applies simply because the questioned person is one whom the police suspect. [27] As the court said in *Oregon v. Mathiason:* [28]

---

**20.** U.C.A., 1953, § 76–10–503.

**21.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**22.** 27 Utah 2d 318, 495 P.2d 1259 (1972).

**23.** *Id.* 495 P.2d at 1260.

**24.** *Supra* n. 3.

**25.** *State v. Shuman,* Utah, 639 P.2d 155 (1981).

**26.** *Miranda, supra* n. 21, 384 U.S. at 444, 86 S.Ct. at 1612.

**27.** 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

**28.** *Id.*

[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because ... the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody."[29]

In the instant case, there is no evidence that the questioning took place in a context where defendant's freedom to depart was restricted in any way. Therefore, *Miranda* was not applicable and defendant's answer was properly admitted to show probable cause.

## IV

Finally, defendant contends that there was no justification for repossession of his personal belongings from Bell after defendant's arrest.

After Cole's arrest for the weapons violation, officers repossessed Cole's leather backpack and men's purse from Bell. While the record is not clear as to Bell's exact position in relation to the vehicle when the items were repossessed, the defendant has not suggested that Bell had withdrawn from the scene to such an extent that the items were no longer under police control as part of the inventory search. Since defendant has the burden of proof to show that the search was unreasonable and has not raised as an issue Bell's location, we assume Bell had not departed and was standing near the vehicle to receive the items Cole was removing from it.

The officers, of course, had no duty to allow defendant to remove any articles from the impounded vehicle. The fact that they changed their minds after defendant's suspicious behavior and arrest and refused to let Bell remove defendant's alleged property from the scene reflects proper police practice under the circumstances.

The officers did not open the backpack or purse at the scene. It was only after defendant was booked at the police station and policemen were inventorying his possessions that the contents of the containers were removed and the controlled substances discovered.

It is well established that an inventory search constitutes a well-defined exception to the warrant requirement.[30] At the jail, it is proper for police officers to inventory property found on the person or in the possession of an arrestee.

In fact, in *Illinois v. Lafayette*,[31] the United States Supreme Court answered in the affirmative the question whether at the time an arrestee arrives at a police station the officers may, without obtaining a search warrant, search a shoulder bag in the possession of that person.

In that case, the defendant was arrested for disturbing the peace. He was removed to the police station and an inventory search of his possessions was undertaken. In the course of that inventory, a shoulder bag was opened and the contents removed. Controlled substances were found, and the defendant contended that the evidence should be suppressed. The lower court agreed on the basis that there is a greater privacy interest in a shoulder bag than in a vehicle, and legitimate state interests could have been met less intrusively by sealing the bag and locking it away.

The United States Supreme Court reversed and upheld the search, reasoning that since the justification for such inventory searches does not rest on probable cause, the absence of a warrant is immaterial. Further, the Court concluded that protection of the arrestee's property, deterrence of false theft claims, jail security and assistance in verification of the arrestee's identity benefits orderly police administration and the public and points to-

---

**29.** *Id.* 429 U.S. at 495, 97 S.Ct. at 712. *See also State v. Burr*, Utah, 579 P.2d 331 (1978).

**30.** *See Opperman, supra* n. 8; *Crabtree, supra* n. 8.

**31.** —— U.S. ——, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

ward the appropriateness of the examination of the contents of the arrestee's shoulder bag. Finally, the Court said that the fact that the purposes of an inventory search might have been accomplished by less intrusive means does not render the search unreasonable.[32] The Court then held that "it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." [33]

*Lafayette* seems to us to aptly and concisely answer defendant's contentions in this case. We therefore hold that the trial court properly refused to suppress the controlled substances found during the inventory search of defendant's backpack and purse.

The conviction and judgment of the trial court are affirmed.

OAKS, HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.

---

**32.** *Id.* 103 S.Ct. at 2610; *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

**33.** *Lafayette, supra* n. 31, 103 S.Ct. at 2611.