STATE of Utah, Plaintiff and Appellant,

v.

Brooke E. BRADFORD, Defendant and Appellee.

No. 910282–CA.

Court of Appeals of Utah.

Oct. 14, 1992.

R. Paul Van Dam, David B. Thompson, and Judith S.H. Atherton, Salt Lake City, for plaintiff and appellant.

Allen S. Thorpe, Castle Dale, for defendant and appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

The State appeals the granting of defendant Brooke E. Bradford's motion to suppress. We reverse and remand for trial.

### FACTS

On July 24, 1990 at 6:24 a.m., Deputy Jeffrey Thomas stopped defendant for traveling seventy-three miles per hour in a fifty-five-mile-per-hour zone on a remote stretch of Highway 10 in rural Emery County. Defendant produced his driver's license but had only a temporary registration or buyer's contract for the vehicle. He told the officer he was traveling from his mother's home in Arizona to his home in Salt Lake City. While speaking to defendant, Deputy Thomas noticed a .22 caliber rifle in the hatchback of the car. Defen-

dant stated the gun was not loaded, and Deputy Thomas did not check the gun at that time. Deputy Thomas noticed defendant appeared "shaky" and thought defendant "might possibly be on something."

Deputy Thomas then returned to his vehicle to check on defendant's driver's license and the registration of the car defendant was driving. While running the driver's license check, Deputy Thomas observed defendant move a black bag toward himself from the hatchback of the vehicle. Deputy Thomas stated he became concerned for his safety, fearing defendant might be reaching for another weapon, and called for assistance. Instead of completing the license and registration checks, Deputy Thomas approached defendant's vehicle to follow up on his concern. He saw the black bag behind the driver's seat under some garbage.

Deputy Thomas questioned defendant as to whether he had any other firearms in the vehicle. Defendant responded that he did not. Deputy Thomas claimed defendant, at this time, gave him permission to look in the vehicle, but defendant disagrees. Deputy Thomas then directed defendant to exit the vehicle and stand by the passenger side. During the search, Deputy Thomas located the black bag, a nylon "fanny pack." Deputy Thomas claimed he opened the bag because he wanted to see if it contained a firearm. Instead, he found marijuana, LSD, cocaine and drug paraphernalia in the bag. Deputy Thomas then placed defendant under arrest and seized the rifle which Deputy Thomas determined was stolen.

Defendant was charged with (1) theft, a second-degree felony, in violation of Utah Code Ann. § 76–6–404 (1990); (2) unlawful

possession of a controlled substance, a third-degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1992); (3) unlawful possession of a controlled substance, a class B misdemeanor, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp. 1992); (4) possession of drug paraphernalia, a class B misdemeanor, in violation of Utah Code Ann. § 58–37a–5 (1990); and (5) speeding, a class B misdemeanor, in violation of Utah Code Ann. § 41–6–46 (1988).

Defendant moved to suppress the evidence, claiming Deputy Thomas obtained the evidence in violation of the Fourth Amendment to the United States Constitution and Article I Section 14 of the Utah Constitution. The trial court granted defendant's motion to suppress and dismissed all charges except speeding, to which defendant pleaded guilty.

The State appeals the trial court's granting of defendant's motion to suppress, arguing the warrantless search of defendant's vehicle was permissible as a protective search for weapons.[1]

In examining a motion to suppress, we review the trial court's findings of fact "under a 'clearly erroneous' standard" and the trial court's "ultimate legal conclusions flowing from these factual findings under a 'correctness' standard." *State v. Lopez,* 831 P.2d 1040, 1043 (Utah App.1992).

## WEAPONS EXCEPTION TO SEARCH WARRANT

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures.[2] *See id.* at 1043; *State v. Lovegren,* 829 P.2d 155, 157 (Utah App.1992). Stopping a vehicle and detaining the occupant is a

---

1. In the suppression proceedings below, the State also argued the warrantless search of defendant's vehicle was independently supported by defendant's consent to search. However, we do not consider this issue as the State does not raise it on appeal.

2. Because the parties offer no independent state constitutional analysis, we restrict our examination to the Fourth Amendment. *See, e.g., State v. Larocco,* 794 P.2d 460, 473 (Utah 1990) (Court declined to address state search and seizure issues because counsel did "not raise any of

these questions, nor ha[d] they been briefed or argued."); *State v. Naisbitt,* 827 P.2d 969, 973 n. 7 (Utah App.1992) ("Until and unless parties brief search and seizure questions under the state constitution, Utah's citizens will remain at the mercy of the 'labyrinth of rules built upon a series of contradictory and confusing rationalizations and distinctions' marking federal search and seizure law.") (quoting *State v. Hygh,* 711 P.2d 264, 271–72 (Utah 1985) (Zimmerman, J., concurring)).

seizure under the Fourth and Fourteenth Amendments. *See State v. Cole*, 674 P.2d 119, 123 (Utah 1983); *State v. Steward*, 806 P.2d 213, 215 (Utah App.1991). Nonetheless, a police officer may stop a vehicle when the officer has witnessed the commission of a traffic violation. *See Lopez*, 831 P.2d at 1043; *State v. Castner*, 825 P.2d 699, 703 (Utah App.1992).

 After stopping a vehicle for a traffic violation, an officer may " 'briefly detain the vehicle and its occupants while he examines the vehicle registration and the driver's license.' " *State v. Johnson*, 805 P.2d 761, 763 (Utah 1991) (quoting *State v. Schlosser*, 774 P.2d 1132, 1135 (Utah 1989)); *accord State v. Hansen*, 837 P.2d 987, 988 (Utah App.1992). The officer may also conduct a computer check for outstanding warrants as long as it does not unduly prolong the duration of the stop. *See State v. Figueroa–Solorio*, 830 P.2d 276, 280 (Utah App.1992); *State v. Robinson*, 797 P.2d 431, 435 (Utah App.1990). However, assuming a clean warrant report, "once the driver has produced a valid license and evidence of entitlement to use the vehicle, 'he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.' " *Robinson*, 797 P.2d at 435 (quoting *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988)). Generally, an officer may further detain an individual only if, during the course of the traffic stop, the officer discovers acts which give him or her reasonable suspicion of other more serious criminal activity. *See id.; accord Hansen*, 837 P.2d at 988.

Under the above authority, Deputy Thomas reasonably detained defendant to the point the computer check was interrupted. Deputy Thomas was engaged in a routine verification of ownership of the car and validity of defendant's driver's license when he claimed he became fearful for his safety because he thought defendant might be reaching for a weapon hidden in the bag he observed defendant grab. Thus, this case turns on whether Deputy Thomas's subsequent questioning of defendant and his ultimate search of defendant's bag were justified under the weapons exception to the search warrant requirement.

 When the safety of the police or the public is threatened, the Fourth Amendment permits officers to conduct a warrantless search. *See, e.g., State v. Larocco*, 794 P.2d 460, 469–70 (Utah 1990); *State v. Palmer*, 803 P.2d 1249, 1252 (Utah App. 1990), *cert. denied*, 815 P.2d 241 (Utah 1991) (protecting police, public safety, and preventing destruction of evidence are exceptions to warrant requirement).

 In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the United States Supreme Court recognized that roadside traffic stops are particularly dangerous when weapons may be present in the area immediately surrounding a suspect. *See id.*, 463 U.S. at 1048–50, 103 S.Ct. at 3480–81. In *Long*, the Court upheld a warrantless weapons search of the defendant's automobile conducted by police incident to a lawful traffic stop because the trial court found the surrounding circumstances justified a reasonable fear that the defendant was dangerous and had access to a weapon. *See id.*, 463 U.S. at 1050, 103 S.Ct. at 3481. The Court found the sighting of a knife on the floor of the car, the defendant's behavior, the late hour, and the rural area combined to support a reasonable fear if the defendant were permitted to reenter the vehicle. *See id.* The Court held:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.... If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances.

*Id.*, 463 U.S. at 1049–50, 103 S.Ct. at 3481 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). Therefore, when an officer reasonably believes a suspect is dangerous and may obtain immediate control of weapons, a protective search is justified. *See id.*, 463 U.S. at 1049, 103 S.Ct. at 3481. An officer may conduct a protective weapons search only if " 'a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.' " *State v. Roybal*, 716 P.2d 291, 293 (Utah 1986) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883). Furthermore, the fact, taken in isolation, that a suspect is outside a vehicle while an officer is conducting a search does not overcome an officer's reasonable fear because the suspect may "break away from police control and retrieve a weapon from [the] automobile." *Long*, 463 U.S. at 1051, 103 S.Ct. at 3482.

The Utah Supreme Court and courts of other jurisdictions have looked to the surrounding circumstances in determining whether a warrantless, protective weapons search was justified. In *Cole*, the defendant, a convicted felon, fit the description of a man who had behaved suspiciously at a grocery store. *See Cole*, 674 P.2d at 121. Police stopped the defendant's vehicle for a traffic violation. *See id.* While impounding the vehicle, police officers became concerned for their safety when they observed the defendant removing a gun case. *See id.* at 122. The Utah Supreme Court held the presence of a gun after the defendant denied having one warranted a protective seizure. *See id.* at 124.

In *State v. Wilkinson*, 56 Wash.App. 812, 785 P.2d 1139, *review denied*, 114 Wash.2d 1015, 791 P.2d 534 (1990), a police officer noticed a car driven by a man whom the officer knew had a suspended driver's license. *See id.*, 785 P.2d at 1140. The driver did not promptly pull the car to a stop. *See id.* While following the vehicle, the officer noticed the defendant, a passenger, moving and leaning as if he were "trying to hide something." *Id.* The officer claimed that upon stopping the car, he made a protective, pat-down search of the defendant because he was concerned for his safety. *See id.* at 1140–41. The court held the legal traffic stop and the defendant's furtive movements gave the officer a reasonable basis to search the defendant and the area within his immediate control. *See id.* at 1143.

■ In the instant case, the trial court refused to uphold the deputy's warrantless search of defendant's vehicle as a valid, protective search for weapons. At the conclusion of the hearing on defendant's motion to suppress, the court stated:

In this case the *Defendant was clearly outside the vehicle, was standing out by the front. He didn't have any access to this bag. It wasn't in his immediate area.* But not only that, but the officer never checked the .22 that was there to see if it was even loaded. I have a little bit of trouble finding that the officer was making a weapons search under these circumstances. And not only that, but to me a weapons search and a consent search are incongruous. In other words, if you're making a weapons search, you don't need a consent. Those are incongruous, if you're asking for consent. If there's a danger, you don't ask for consent. You address the danger. Therefore, I can find that there was no danger here. *There was no reason to think, since he was standing outside, that there was an exception to the weapons check.*

. . . . .

... The only thing he did, the officer said, was he moved the bag from the back to the front. And that's when he moved away from the reasons for his initial stop. And that was the sole basis of his suspicions, which could be very innocent. It could be criminal, but you have to have—*you have to convince me you were convinced it was criminal.* I don't find anything of that sort in this case.

(Emphasis added.)

■ By declaring Deputy Thomas must convince the court he was certain defendant's actions were criminal in order to validate a weapons search, the trial court incorrectly applied a subjective standard.

The proper standard is objective, requiring only that a reasonably prudent person in the police officer's circumstances would believe his or her safety was threatened. *See Roybal*, 716 P.2d at 293; *Cole*, 674 P.2d at 124.

Furthermore and contrary to the trial court, we see *Long* as being applicable and factually similar to the present case. In both cases, police officers initially stopped a vehicle for a traffic violation, noticed the driver's unusual behavior, suspected the driver was under the influence of alcohol or drugs, and observed a weapon in plain view while legitimately conducting the process of issuing a citation. While the defendants were outside the vehicles, the officers then searched the vehicles for weapons, ultimately discovering controlled substances. The *Long* Court, relying on the inherent volatility of many roadside police encounters, rejected the argument that, because a defendant is temporarily under an officer's control during an investigative stop, the defendant presents no dangerous threat to the officer. *See Long*, 463 U.S. at 1051–52, 103 S.Ct. at 3482. Thus, the trial court erred in reasoning defendant presented no danger to Deputy Thomas simply because defendant was outside the car and had no ready access to the black bag during Deputy Thomas's search.

We are persuaded that, under the totality of the circumstances, a reasonable officer would believe his or her safety was at risk. Defendant's speeding, the remote area, the early hour, defendant's apparent shaking as if he were "on something," the presence of a rifle, and defendant's furtive retrieval of a bag combine to create a reasonable belief that defendant presented a threat to Deputy Thomas's safety. *Cf. Long*, 463 U.S. at 1050, 103 S.Ct. at 3481; *Wilkinson*, 785 P.2d at 1143. Therefore, we reverse the trial court's order granting defendant's motion to suppress and remand for trial.

GREENWOOD and ORME, JJ., concur.