**STATE of Utah, Plaintiff and Appellee,**

v.

**Henry LEE, Defendant and Appellant.**

No. 920566–CA.

Court of Appeals of Utah.

Oct. 22, 1993.

Robert K. Heineman and Lisa J. Remal, Salt Lake City, for appellant.

Jan Graham and Charlene Barlow, Salt Lake City, for appellee.

Before BILLINGS and ORME, JJ., and GARFF,[1] Senior Judge.

## OPINION

ORME, Judge:

Defendant, Henry Lee, appeals from a conditional plea[2] of no contest to the charge of attempted possession of a controlled substance, in violation of Utah Code Ann. § 58-37-8(2)(a)(i), (7) (Supp.1993), a class A misdemeanor. This appeal primarily concerns the basis for no-knock authorization in the search warrant and the effect of omissions from the underlying affidavit concerning certain facts known to the affiant. We affirm.

## FACTS

On December 24, 1991, Parole Officer Brad Bassi executed an affidavit alleging that Vera Mason was using and selling cocaine and heroin in an apartment located on Roberta Street in Salt Lake City. Based upon the affidavit, a warrant was issued authorizing the search of Mason and the

---

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78-3-24(10) (1992).

2. Such pleas are appropriate under certain circumstances. *See State v. Sery,* 758 P.2d 935, 939 (Utah App.1988).

Roberta Street premises. The warrant authorized entry without notice of authority or purpose, i.e., on a no-knock basis. Neither the affidavit nor the search warrant named defendant Henry Lee, who was discovered in the residence during the search.

The information in Bassi's affidavit came from two sources. The first was an interview with Probation Officer Harvey Van Katwyk. As Bassi recited in his affidavit,

Van Katwyk had been told by one of Van Katwyk's probationer[s] that Jack Sirstins, who was reportedly a Federal Fugitive, Vera Mason, and Joe Dowell, were all three using and selling, cocaine and heroin at the [Roberta Street] premises.... Further the most recent observation [by the probationer] was within the last 2 weeks.

The affidavit also stated that Officer Van Katwyk believed this information to be truthful and accurate because the observations were first-hand, the probationer had not been promised or paid anything for the information, and the probationer was concerned about a friend who had been purchasing and using heroin at the premises.

Officer Bassi's second source of information was an individual he termed "CI." Bassi stated, in pertinent part, that

CI has been inside the named premises and observed Vera Mason and Joseph Dowell[ ] are selling cocaine and heroin at the named premises.... Further the CI has stated that when agents from [the office of Adult Probation and Parole] conduct home visits at the named premises, persons inside the named premises flee from a side exit, for fear of being arrested for possession or use of narcotics.

[T]he most recent observation [by CI] of narcotics sales and usage at the named premises was on December 21st, 1991. Further your affiant was told that Vera Mason and Joseph Dowell were selling "a large quantity of narcotics", from the named premises. CI has told your affiant that this illicit operation is ongoing, that Vera Mason has been selling narcotics out of the premises for a long period of time, and further that Joe

Dowell has been assisting Vera Mason in the illicit operation for approximately 1½ months.

. . . .

.... Your affiant has been told that the CI has made purchases of heroin from the named premises within the last 3 days.

Bassi's affidavit recites that he believed CI's information because he had "not promised nor paid the CI anything for the information" and the CI had made "statements against [his] own penal interest."

Bassi indicated in the affidavit that he was the supervising parole officer for Dowell and that Dowell had a prior arrest "for bank robbery (armed), burglary, and at least 4 prior arrest[s] for distribution of a controlled substance." Furthermore, Bassi stated that Dowell had been out of prison for approximately two months and was presently on parole for distribution of heroin and cocaine. Bassi also expressed the view, based on his experience, that parolees often return to their criminal associates and habits.

Bassi sought no-knock authorization and stated:

Your affiant prays for no-knock service of this warrant. Your affiant has reviewed the criminal history of DOWELL and he has a prior armed robbery. Further your affiant has been told that MASON has prior arrest for weapons and narcotics related offenses.

The affidavit goes on to state that "[y]our affiant also knows from training and experience that the items sought pursuant to this search warrant are easily destroyed, hidden or altered." Finally, two pre-printed statements were checked, whereby it was alleged physical harm might occur or the property sought might be quickly destroyed if notice were given prior to entry.

At the time the search was actually carried out, which was a few hours after the warrant was issued, Officer Bassi knew Joseph Dowell was in custody at Adult Probation and Parole, and therefore posed no threat either to the officers executing

the warrant or to others. It is undisputed that Bassi did not advise the issuing magistrate about this change in circumstances. However, defendant concedes Dowell was not in custody at the time Officer Bassi submitted his affidavit and obtained the warrant. He further admits that "[t]here is no evidence in the record as to whether Officer Bassi intended at the time of the warrant's issuance to have Dowell under custody before exercising the warrant." In addition, the magistrate was never informed that the individual cryptically termed "CI" in the affidavit was also a probationer and had at least one prior conviction for a drug offense.

Officers executed the warrant in typical no-knock fashion. Once inside, while positioned in the hallway, the officers ordered anyone in the adjoining rooms to exit into the hallway. Defendant Lee emerged from a bedroom. Defendant was ordered to the floor and the officers entered the bedroom where they discovered another man lying on the floor next to the bed. The room also contained three needles, heroin cut in pieces on a plate lying on the bed, a knife on the plate, "various drug paraphernalia," and spoons and packaging material lying on a small table. During the course of the search and investigation, agent Bassi noticed "fresh [needle] track markings" on defendant's arm. He also observed symptoms of heroin ingestion, such as defendant "nodding off." However, the great cache of drugs referred to in the affidavit and evidence of drug distribution, as opposed to personal consumption, were apparently wholly lacking. Defendant was arrested and taken to jail where syringes were found during a search of his person.

Defendant filed a motion to suppress, claiming the search and ensuing discovery of incriminating evidence violated his constitutional rights. Following a hearing, the trial court issued a minute entry denying the motion. The prosecution then submitted written findings of fact and conclusions of law, which the court adopted. Defendant entered a plea of no contest to attempted possession of a controlled substance, specifically reserving his right to appeal the denial of his motion to suppress. Defendant was sentenced and placed on probation.

Defendant bases his appeal on the following grounds: (1) no basis existed for issuing a no-knock warrant as of the time the search was carried out; (2) the affidavit supporting the warrant was flawed due to material omissions that invalidate the determination of probable cause; (3) the search warrant was invalid under the Utah Constitution; and (4) no sufficient nexus exists between defendant and the evidence upon which he was arrested.

## JUSTIFICATION FOR NO–KNOCK WARRANT

Defendant argues that, in light of Dowell's pre-search detention, there was insufficient basis to justify no-knock authorization. Defendant argues that without the threat to safety posed by Dowell, there was no basis for the authorization in terms of a threat of physical harm. *See* Utah Code Ann. § 77–23–10(2) (1990) (no-knock warrant may be issued "upon proof, under oath, that the object of the search may be quickly destroyed ... or that physical harm may result to any person if notice were given"). Defendant contends the remaining allegations concerning Vera Mason— that "your affiant has been told that MASON has prior arrest for weapons and narcotics related offenses"—are insufficient to justify a no-knock warrant. Furthermore, argues defendant, the affidavit is insufficient to justify a no-knock warrant based on the destructibility of evidence because the affidavit plainly states that "a large quantity of narcotics" was being sold from the premises and the bulk of the items sought in the search warrant, such as scales, plastic bags, and spoons, are not easily destroyed.

Defendant asserts that to permit a no-knock warrant based on the facts in the affidavit concerning destructibility of evidence would result in a "blanket rule" that no-knock authorization may be obtained automatically whenever drugs are an object of a search. Defendant argues that such a blanket rule violates the Fourth Amend-

ment of the United States Constitution;[3] Article I, section 14, of the Utah Constitution; and Utah Code Ann. § 77–23–10(2) (1990).

■ While defendant bases his argument on these three separate underpinnings, he has not differentiated among them.[4] No argument has been advanced as to why, if we were to uphold the no-knock authorization under section 77–23–10(2), the result would somehow be different under the Fourth Amendment or the Utah Constitution.[5] Consequently, we treat the contention as a single argument with three legal bases, rather than as three separate arguments, and proceed to examine the affidavit under section 77–23–10(2).

■ That statutory provision reads in pertinent part:

When a search warrant has been issued authorizing entry into any building ... the officer executing the warrant may use such force as is reasonably necessary to enter:

....

(2) Without notice of his authority and purpose, if the magistrate issuing the warrant directs in the warrant that the officer need not give notice. The magistrate shall so direct only upon proof, under oath, that the object of the search may be quickly destroyed, disposed of, or secreted, or that physical harm may result to any person if notice were given.

Utah Code Ann. § 77–23–10(2) (1990). Basically, this provision permits no-knock authorization if targeted evidence can be easily destroyed or if notice poses danger to anyone.[6] When reviewing an affidavit au-

3. As a result of *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), it is generally understood that the rule of announcement in executing warrants is one of federal constitutional dimension, implicit in the Fourth Amendment prohibition against unreasonable searches and seizures. *See State v. Sakellson,* 379 N.W.2d 779, 784 (N.D.1985); *State v. Cleveland,* 118 Wis.2d 615, 348 N.W.2d 512, 517 (1984). However, the Supreme Court has not "detailed the minimum constitutional requirements for the manner in which a search warrant is executed." *State v. Williams,* 168 Wis.2d 970, 485 N.W.2d 42, 46 (1992). It is generally recognized that the knock and announce rule may be excused only if exigent circumstances exist to justify the no-knock entry. *Id.* Two of those exceptions are (1) when the police reasonably act to prevent the destruction of items named in the warrant and (2) when notice would increase the peril of the officers or others. Wayne R. LaFave, *Search and Seizure* § 4.8(d) at 280, (e) at 284 (1987 ed.). These exceptions are explicitly recognized in Utah's knock and announce statute, Utah Code Ann. § 77–23–10(2) (1990).
    We need not visit in this case the intriguing question of whether a violation of the no-knock statute necessarily constitutes a violation of the constitution because here the statute was not violated.

4. Specifically, defendant presents his primary argument under the heading "Fourth Amendment" and then states that the argument is equally applicable under Utah law. Defendant goes on to argue that even if there were adequate cause for a no-knock warrant under the Fourth Amendment or the Utah Constitution, this court should still exclude the evidence because section 77–23–10(2), in defendant's words,

"requires 'proof' before a magistrate may direct that a warrant may be executed without prior announcement." This argument, dealing with the requirement of proof, was recently discussed in *Salt Lake City v. Trujillo,* 854 P.2d 603, 610 (App.1993). As in *Trujillo,* defendant "places undue emphasis on the requirement of 'proof'" and "ignores the use of 'may.'" *Id.* "Section 77–23–10 allows no-knock authorization if targeted evidence can be easily destroyed." *Id.* Accordingly, we are not willing to interpret the statute, by reason of the term "proof," to require a higher standard than would be required under the Fourth Amendment and the Utah Constitution.

5. However, an argument is made that even if the warrant's issuance does not violate the federal and state constitutions, the statute has at least been violated, requiring suppression. As will be seen, we do not agree that the statute was violated.

6. By virtue of section 77–23–10, Utah is among "[a] small number of jurisdictions" that "have adopted legislation permitting magistrates to issue search warrants specifically authorizing entry without prior announcement upon a sufficient showing to the magistrate of a need to do so, either to prevent destruction of evidence or to prevent harm to the executing officer." Wayne R. LaFave, *Search and Seizure* § 4.8(g) at 287 (1987 ed.). Interpreting a prior no-knock statute, which was substantively similar to section 77–23–10, the Utah Supreme Court rejected the argument that the statute was unconstitutional. *State v. Spisak,* 520 P.2d 561, 562 (Utah 1974). *Cf.* Wayne R. LaFave, *Search and Seizure* § 4.8(g) at 288 (1987 ed.) ("*Parsley v. Superior Court* [9 Cal.3d 934, 109 Cal.Rptr. 563,

thorizing no-knock entry, we view its contents as a whole and in a common sense manner. *State v. Rosenbaum*, 845 P.2d 962, 965 (Utah App.1993). While defendant's argument might be well-taken if safety concerns were the sole basis for no-knock authorization in this case, we conclude that the affidavit, viewed in its entirety, provides a sufficient basis under the destructibility-of-evidence prong of the no-knock statute.

■ We emphasize that we do not endorse a blanket rule which allows no-knock warrants whenever drugs are involved.[7] *See State v. Rowe*, 806 P.2d 730, 733 n. 3 (Utah App.1991), *rev'd on other grounds*, 850 P.2d 427 (Utah 1992). However, a no-knock warrant is permissible when the affidavit, read as a whole, indicates the evidence sought is such that it may be easily and quickly destroyed. *Id.* at 732–33. The practical reality is that drugs are, by their nature, readily disposable, and this court recognizes that reality. *See id.*

■ The affidavit alleges "a large quantity of narcotics" was being sold, but there is no indication that the quantity located on the premises was so massive as to preclude its quick destruction. The affidavit states that, at a minimum, Vera Mason, Joe Dowell, Jack Sirstins, and the probationer's friend who was purchasing heroin were all personally using cocaine or heroin. It can be fairly inferred from the affidavit that some of the narcotics sought were being sold and used—and consequently packaged and available—in quantities small enough for personal consumption and, therefore, quick destruction. In addition, narcotics, particularly cocaine and heroin, are by their nature readily disposable. A large quanti-

ty of cocaine, in retail terms (or even in relative terms), is still easily destroyed in a typical residential setting. Defendant points out that *Rowe* suggests a "large quantity" of drugs may not support a no-knock warrant based on destructibility because a large amount can not be rapidly destroyed. *Id.* However, a "large quantity" of heroin or cocaine, in a residential setting, is a manageable volume for flushing purposes.

■ Reviewing the affidavit as a whole and in a common sense manner, we conclude that it provides a sufficient basis for issuance of a no-knock warrant on the destructibility prong of the statute.[8] The issuing magistrate could easily and reasonably infer that heroin and cocaine, even in what might be imprecisely referred to as a "large quantity," might be quickly destroyed if the officers were required to knock and announce themselves and their mission. This is especially so where the drugs were being used in and sold from the house, and where furtive conduct would occur when probation and parole officers arrived to conduct home inspections.

## MATERIAL MISREPRESENTATIONS OR OMISSIONS IN AFFIDAVIT

Defendant's second argument is that the affidavit is deficient because Officer Bassi omitted material facts which, if added, negate probable cause. Defendant's argument is based on the following analysis.

■ In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held that where the defendant makes a substantial preliminary showing that a false state-

---

513 P.2d 611 (1973) ] ... made some comments which might be taken to cast serious doubt upon the constitutionality of any no-knock warrants legislation.").

7. Nor, apparently, does the Legislature. The predecessor to section 77–23–10 specifically referred to illegal drugs as a self-standing basis for no-knock authorization. *See State v. Spisak*, 520 P.2d 561, 562 (Utah 1974). That specific reference, suggestive of a blanket rule, has fallen by the wayside.

8. In light of this determination, we need not reach defendant's argument concerning the applicability of the good faith exception. *See generally United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The federal good faith exception provides that where an officer acts in objectively reasonable reliance on a warrant subsequently held to be invalid, the exclusionary rule does not apply. *State v. Thompson*, 810 P.2d 415, 419 (Utah 1991). Because we have not held the warrant to be invalid, we need not address this argument.

ment knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155–56, 98 S.Ct. at 2676. The Utah Supreme Court has extended the reasoning in *Franks* to include misstatements which occur because information is omitted. *State v. Neilsen*, 727 P.2d 188, 191 (Utah 1986). Thus, under *Neilsen*, a defendant must establish by a preponderance of the evidence that material information has been intentionally, knowingly or recklessly omitted, and, that with the omitted information inserted, the affidavit does not support probable cause. *Id.*

■ Defendant claims that two pieces of information, known to Officer Bassi at the time he submitted the affidavit, were omitted from the affidavit: 1) that the person referred to in the affidavit as CI was on probation and 2) that CI had at least one prior conviction for a drug offense.[9] Defendant argues that this information is material and that its addition defeats probable cause because it bears on the credibility of Officer Bassi's statements and reflects on the reliability of the information received from CI.

As to Officer Bassi's credibility, defendant argues that had the magistrate known CI was a probationer, he would have seen the inconsistency between a probationer

giving information that he had just bought drugs and the statement that "affiant has not promised nor paid CI anything for the information provided." Defendant suggests Officer Bassi was not being truthful when he stated nothing was promised to CI since the probationer would not tell a parole officer he bought drugs without something being given or promised in exchange.

As the State points out, defendant would have us infer that Officer Bassi *necessarily* lied about not giving CI anything in return for the information and that therefore he is not reliable. In effect, defendant suggests no other scenario is possible. We disagree with defendant's assertion. Even absent a promise, a probationer might well choose to help a parole officer, *hoping* for some favorable treatment from his own probation officer. The statements in the affidavit, then, are not necessarily irreconcilable with the omitted information.[10] We are especially reluctant to assume misstatements on Officer Bassi's part since defendant had an opportunity to cross examine him during the hearing on the motion to suppress and, while eliciting that CI was a probationer and had a prior drug conviction, defendant apparently failed to ferret out anything that would indicate Officer Bassi in fact offered inducements in exchange for CI's cooperation. Nor has anything in the record that would so indicate been called to our attention. *Cf. Franks*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978) (defendant must first establish perjury or reckless disregard of truth before court will review affidavit with false material excised).

Defendant also argues that the omitted information cast such doubt on the veracity and reliability of CI's statements that they cannot support a determination of probable cause. Defendant's argument, if accepted and taken to its logical conclusion, would result in the exclusion of CI's statements in their entirety and in the examination of

---

9. The State does not dispute that Officer Bassi knew this information or that it was omitted from the affidavit.

10. We do not, however, approve of withholding information from a magistrate. A magistrate is entitled to weigh all the relevant information and an affiant should of course err on the side of inclusion.

only Officer Bassi's and the other probationer's statements for probable cause. We decline, however, to excise CI's statements.

■ Utah appellate courts no longer follow the hypertechnical *Aguilar–Spinelli* "two-pronged" test[11] and instead follow the totality-of-the-circumstances test laid down by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). *See Salt Lake City v. Trujillo*, 854 P.2d 603, 610 (Utah App.1993); *State v. Brown*, 798 P.2d 284, 285–86 (Utah App.1990). The *Gates* test requires

> a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... [,] there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. However, within the context of *Gates*, Utah courts use the *Aguilar–Spinelli* factors as guides. Accordingly, "an informant's 'reliability' and 'basis of knowledge' are but two relevant considerations, among others, in determining the existence of probable cause under 'a totality-of-the-circumstances.'" *State v. Hansen*, 732 P.2d 127, 130 (Utah 1987) (quoting *Gates*, 462 U.S. at 233–34, 103 S.Ct. at 2328–30, 2330–31). Further, "[a] search warrant may be issued when, under the totality-of-the-circumstances, the information given by multiple confidential informants is sufficient to establish probable cause. This is true even if an individual informant's information would not establish probable cause if considered separately." *State v. Singleton*, 214 Utah 30, 854 P.2d 1017, 1020 (Utah App.1993) (citations omitted).

Viewed under the totality-of-the-circumstances, we conclude the affidavit establishes probable cause even if the omitted facts concerning CI are added. Nor does addition of those facts seriously undercut CI's credibility so as to necessitate excision of his statement in their entirety. It seems rather uneventful that an individual with a prior drug conviction would be in contact with drug dealers and purchasing narcotics. More importantly, CI had personally observed Vera Mason and Joseph Dowell selling heroin and cocaine from the Roberta Street home. CI observed Dowell using narcotics. CI told Officer Bassi that Dowell had been assisting Mason for approximately one and a half months, that Mason had been selling narcotics out of the premises for a long time, and that CI had observed the sale and usage of narcotics as recently as three days before the affidavit was signed.

This information was corroborated in large part by the probationer. Probationer observed first-hand that Vera Mason and Joe Dowell were selling heroin and cocaine from the Roberta Street premises. Probationer observed Dowell, in addition to others, using narcotics at the residence. These observations were within two weeks of the date the affidavit was signed, thus lending credence to CI's more recent observations and Officer Bassi's conclusion that the operation was ongoing.

CI's observations also mesh with several statements by Officer Bassi. Officer Bassi had been to the Roberta Street premises and observed Mason and Dowell there. He also stated that he was aware Mason had a history of substance abuse and sales. CI indicated Dowell had been assisting Mason for one and a half months and Bassi stated Dowell had been out of prison for approximately two months.

Finally, the affidavit indicates Officer Bassi believed CI's statements to be truthful because CI had not been promised or paid anything, and CI made the statements against his penal interest. These statements are not, as previously indicated, inherently inconsistent with the omitted facts that CI was a probationer with a prior drug conviction.[12] Nor has defendant shown the

---

**11.** This test required the affidavit to set forth sufficient underlying circumstances to establish (1) the basis of knowledge of the informant and (2) the informant's veracity or reliability. *See*

*Illinois v. Gates*, 462 U.S. 213, 228–29, 103 S.Ct. 2317, 2327, 76 L.Ed.2d 527 (1983).

**12.** In one sense, at least, these facts only bolster the reliability of Officer Bassi's affidavit by ex-

statements to be untrue, and we will not assume that they are false without at least some showing to that effect.

In summary, even when we add to the affidavit that CI had a prior drug related conviction and was on probation when he took part in criminal conduct at the Roberta Street home, the affidavit supports a determination of probable cause under the totality-of-the-circumstances.

## STATE CONSTITUTIONAL ANALYSIS

■ Defendant would have this court adopt the two-pronged *Aguilar–Spinelli* test as a requirement of article I, section 14, of the Utah Constitution, when determining whether information obtained from a confidential informant is sufficient to establish probable cause. The *Aguilar–Spinelli* test, formerly the federal standard, requires that the affidavit in support of a search warrant set forth: 1) the basis upon which the informant concludes that evidence will be found at the site to be searched and 2) the basis upon which the affiant believes the information is credible or that the informant is reliable. *See Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 415–16, 89 S.Ct. 584, 588–89, 21 L.Ed.2d 637 (1969). However, the current federal standard, as previously noted, is found in the totality-of-the-circumstances analysis set forth in *Gates*. *See* 462 U.S. at 238–39, 103 S.Ct. at 2332.

Defendant's contention need not be addressed at length. This court recently stated, in response to the same argument, that "the Utah Supreme Court has consistently employed the *Gates* standard in evaluating challenges to search warrant affidavits based on the federal constitution without any expressed hesitation or trepidation." *Salt Lake City v. Trujillo*, 854 P.2d 603, 609 (Utah App.1993). *See State v. Rosenbaum*, 845 P.2d 962, 964 (Utah App.1993).

While acknowledging that the concerns underlying *Aguilar–Spinelli* continued to play an important role in the *Gates* analysis, the *Trujillo* court declined to make the *Aguilar–Spinelli* doctrine a standard required by the Utah Constitution. *See* 854 P.2d at 609. We follow suit. And as discussed in the preceding section, under the *Gates* test, we hold that the affidavit is sufficient to establish probable cause.

## SUFFICIENCY OF NEXUS BETWEEN INCRIMINATING EVIDENCE AND DEFENDANT

Defendant further claims that even if the search was constitutional, as we have held, the officers did not have probable cause to arrest him.

Under Utah law, a peace officer can make an arrest without a warrant "for any public offense" committed in his presence or when he has "reasonable cause to believe a felony has been committed and has reasonable cause to believe that the person arrested has committed it." Utah Code Ann. § 77–7–2(1), (2) (1990). The officer performing his duties "is not required to meet any such standard of perfection as to demand an absolutely certain judgment before he may act." *State v. Eastmond*, 28 Utah 2d 129, 499 P.2d 276, 278 (1972). The Utah Supreme Court has addressed the requirement of probable cause to arrest without a warrant in the following terms:

> "The determination should be made on an objective standard: whether from the facts known to the officer, and the inferences which fairly might be drawn therefrom, a reasonable and prudent person in his position would be justified in believing that the suspect had committed the offense."

*State v. Cole*, 674 P.2d 119, 125 (Utah 1983) (quoting *State v. Hatcher*, 27 Utah 2d 318, 495 P.2d 1259, 1260 (1972)); *State v. Seel*, 827 P.2d 954, 960 (Utah App.1992).

plaining how a probation officer would come into possession of the information. A probation officer would be an unusual recipient of such information if offered by a concerned citizen or even a paid informant—that such information

would find its way to a probation officer and be reliable is much more understandable when one learns the source of the information is himself on probation.

The crux of defendant's argument is that there was an insufficient nexus between him and the contraband found during the initial search to justify his arrest.[13] The fact that he emerged from a room containing narcotics is not determinative, argues defendant, because "[t]he evidence fails to show that [he] was in possession of narcotics."

Defendant was arrested and charged with unlawful possession of a controlled substance, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1993).[14] Under this statute it is unlawful "for any person knowingly and intentionally to possess or use a controlled substance." *Id.* " 'Possession' or 'use' " is statutorily defined as, among other things, the "inhalation, swallowing, injection, or consumption ... of controlled substances." *Id.* § 58–37–2(27).

In concluding that probable cause existed to arrest defendant, the trial court found that defendant emerged from a bedroom in which a plate was found with eight "chips" of "black tar heroin," along with paraphernalia to "cut" and inject the heroin; that fresh hypodermic "tracks" were seen on defendant's arms; and that other indicia of heroin intoxication were observed, such as defendant's "nodding off."

These findings are supported by the record. Officer Bassi testified to defendant emerging from the bedroom and the items found therein. Officer Bassi also stated that he saw fresh needle "tracks" on defendant's arm. Further, the officer had dealt with heroin, and specifically persons intoxicated with heroin, "many times." One "obvious effect" of heroin intoxication, Bassi testified, is "a sense of not being able to keep their balance, having a tough time staying awake. We call it nodding off. And that was very specific to Mr. Lee at that time." While falling asleep, in and of itself, would not usually give rise to probable cause to believe heroin had been ingested, falling asleep immediately after the execution of a no-knock entry and during the consequent search of the premises is highly irregular behavior. Sleepiness in the face of a full-fledged police raid is especially peculiar given judicial recognition that agitated behavior is the more typical human reaction to police encounters.[15] Nodding off, coupled with the nearby presence of heroin and the instruments used to inject that heroin, plus physical evidence of injection, properly establish probable cause to arrest defendant for unlawful possession of a controlled substance.

## CONCLUSION

The affidavit in question provided a sufficient basis for the issuance of a no-knock warrant based on the destructibility of the evidence. The affidavit was not invalid due to the omitted information concerning the confidential informant. Finally, a sufficient nexus exists between the defendant and the evidence upon which he was arrested and charged. We accordingly affirm defendant's conviction.

BILLINGS, J., and GARFF, Senior Judge, concur.

**13.** Defendant cites *State v. Fox,* 709 P.2d 316, 319 (Utah 1985) and *State v. Salas,* 820 P.2d 1386, 1388 (Utah App.1991), in support of this proposition. Defendant's reliance is misplaced. The issue here involves whether the police had probable cause to arrest defendant. Probable cause does not require proof sufficient to establish guilt. *Fox* and *Salas,* by contrast, addressed whether the evidence in those cases was sufficient to prove each element of the crime beyond a reasonable doubt.

**14.** Pursuant to his *Sery* plea, *see* note 2, defendant eventually pled no contest to the lesser charge of attempted possession of a controlled substance. Utah Code Ann. § 58–37–8(2)(a)(i), (7) (Supp.1991).

**15.** *Cf. State v. Mendoza,* 748 P.2d 181, 184 (Utah 1987) ("nervous behavior" accorded no weight in determining whether reasonable suspicion exists to conduct investigatory stop); *State v. Sierra,* 754 P.2d 972, 976 (Utah App.1988) ("nervous conduct ... when confronted by a Utah Highway Patrol trooper is consistent with innocent as well as with criminal behavior").