STATE of Utah, Plaintiff and Appellee,

v.

Lester ANDERSON, Defendant
and Appellant.

No. 940402.

Supreme Court of Utah.

Feb. 2, 1996.

**1230**

Jan Graham, Atty Gen., Todd A. Utzinger, Asst. Atty Gen., Salt Lake City, for plaintiff.

Shelden R. Carter, Provo, for defendant.

RUSSON, Justice:

Lester Anderson appeals the trial court's denial of his motion to suppress evidence prior to his guilty plea for possession of a controlled substance (methamphetamine) with the intent to distribute, a second degree felony, and for possession of a controlled substance (marijuana) with the intent to distribute, a third degree felony.[1] This case was certified to this court by the Utah Court of Appeals under rule 43 of the Utah Rules of Appellate Procedure.[2] We affirm.

## I. FACTS

■ In reviewing the trial court's ruling, we recite the facts in the light most favorable to the trial court's findings. *State v. Pena,* 869 P.2d 932, 936 (Utah 1994); *State v. Ramirez,* 817 P.2d 774, 782 (Utah 1991).

In May 1993, as a result of reports from two informants, the Millard County Sheriff's Office suspected that Anderson was trafficking narcotics. On the night of May 9, Deputy Sheriff Jeffrey Whatcott was informed by Beth Fullmer, Anderson's former live-in girlfriend, that Anderson and Vance Abbott had gone to Las Vegas, Nevada, to purchase methamphetamine. According to Fullmer, Anderson and Abbott were traveling in Anderson's Cadillac and were planning to return to Millard County the following afternoon via highway 257. Fullmer also warned Deputy Whatcott that Anderson might be armed. Later that night, Deputy Whatcott delivered Fullmer's information to Detective Robert Dekker, who was at the time investigating a theft possibly perpetrated by Anderson.

On the following day, at about 1:30 p.m., Detective Dekker received similar information concerning Anderson's smuggling activities from another police officer. Millard County Deputy Sheriff Forest Roper reported that a second informant had accused Anderson of transporting narcotics. This informant revealed that Anderson and a companion, Abbott, were transporting drugs from Las Vegas to Millard County. Furthermore, the informant asserted that Anderson would return that afternoon on highway 257. The informant also warned that Anderson would be armed. Deputy Roper did not disclose the identity of his informant, who had actually received the information from another undisclosed source, but he testified that he had known the informant for approximately five years.

Upon receiving the second report from Deputy Roper, Detective Dekker asked the county attorney's office to obtain a search warrant. The county attorney's office set about securing the warrant.

However, because of the urgency of the situation, Detective Dekker made alternate plans in case he could not execute a search warrant before Anderson arrived at his home. He met with Deputy Whatcott, Utah Highway Patrol Trooper Eric Nielsen (Trooper Nielsen), and Millard County Deputy Sheriff Brad Nielsen (Deputy Nielsen) at about 2 p.m., informed them of the informants' reports, and advised the officers to be on the lookout for Anderson's vehicle. Detective Dekker further instructed them that if any of the officers located Anderson, he should report the discovery to him.

Detective Dekker also cautioned the officers that both informants had warned of Anderson's possession of firearms. Both Deputy Whatcott and Deputy Roper were familiar with Anderson's numerous weapons. Both had been to Anderson's house on unrelated calls and had observed Anderson's guns. For these reasons, Detective Dekker

---

1. Anderson entered a conditional guilty plea, preserving his right to appeal the suppression ruling. *See State v. Mabe,* 864 P.2d 890, 892 (Utah 1993); *State v. Sery,* 758 P.2d 935, 937–38 (Utah Ct.App.1988).

2. Rule 43 provides that in certain enumerated circumstances, the court of appeals "may, upon the affirmative vote of four judges of the court, certify a case for immediate transfer to the Supreme Court for determination."

wanted Anderson detained before he arrived at his house containing his array of weaponry. The detective therefore determined that Anderson's vehicle should be stopped as soon as it was spotted, even if no search warrant had been obtained by that time.

Detective Dekker and Deputy Whatcott then drove to Anderson's house, which was five to six miles off highway 257, to verify that his Cadillac was not present. Upon arrival, the officers noticed that several vehicles were at the house but Anderson's Cadillac was not.

At about 2:30 p.m., Trooper Nielsen sighted Anderson's Cadillac heading north on highway 257. Trooper Nielsen recognized the driver as Anderson. Following Detective Dekker's instructions, Trooper Nielsen reported to Detective Dekker, who, with Deputy Whatcott, joined the pursuit near Deseret, Utah. Because Trooper Nielsen was the only officer in a marked patrol car and wearing a uniform, Detective Dekker requested an additional marked patrol car before authorizing the stop of Anderson.

Shortly thereafter, Trooper Nielsen, joined by Detective Dekker, Deputy Whatcott, and Deputy Nielsen, stopped Anderson's Cadillac not far from his residence intending to conduct a warrantless search for contraband. Out of concern for their safety, the officers decided to "detain and secure" the two men. The officers, with weapons drawn, ordered Anderson and Abbott out of the Cadillac and commanded the two men to place their hands on their heads, walk backward, and lie face down on the ground. The officers then handcuffed the two men and searched them for weapons. Although the pat-down search revealed no firearms, Deputy Whatcott discovered a canister of what appeared to be marijuana on Abbott. No contraband was found in Anderson's immediate possession.

After ensuring their safety, Deputy Whatcott and Trooper Nielsen searched Anderson's Cadillac for weapons and drugs. There, the officers found a canister and a bag, each containing marijuana. At that time, no methamphetamine was located.

After locating marijuana in the Cadillac and in Abbott's possession, Deputy Whatcott placed both Anderson and Abbott under arrest. In addition, Anderson's vehicle was towed to a secure impound lot located at the sheriff's office. The lot was enclosed by a chain link fence, and police authorization was required to enter the area.

The morning after his arrest, Abbott requested and received an interview with Millard County Deputy Sheriff John Kimball. Abbott divulged to Deputy Kimball that methamphetamine was hidden underneath the carpet on the front-passenger side of Anderson's Cadillac. Thereafter, Deputy Kimball and Deputy Roper conducted a warrantless search of Anderson's Cadillac in the impound lot. Just as Abbott had reported, the officers found quantities of methamphetamine hidden in Anderson's vehicle.

Anderson was charged with two counts of unlawful possession of a controlled substance with intent to distribute, both felonies under section 58–37–8(1)(a)(iv) and (1)(b)(i)-(ii) of the Utah Code. Anderson moved to suppress as evidence the marijuana and the methamphetamine seized from his vehicle under both article I, section 14 of the Utah Constitution and the Fourth Amendment to the United States Constitution. The trial court denied Anderson's motion. Anderson subsequently entered, and the trial court accepted, a conditional guilty plea to the crimes charged. The conditional plea preserved Anderson's right to appeal the suppression ruling. Anderson appealed to the Utah Court of Appeals, which certified the case to this court pursuant to rule 43 of the Utah Rules of Appellate Procedure.

On appeal, Anderson raises three claims of error regarding the trial court's evidentiary rulings: (1) The initial stop by police escalated to the level of an arrest and was not supported by probable cause; (2) a warrantless roadside search of Anderson's vehicle was neither supported by probable cause nor necessitated by exigent circumstances; and (3) the warrantless station house search of Anderson's vehicle conducted the day after Anderson's arrest was not necessitated by exigent circumstances.

Anderson argues that the warrantless roadside search does not fall within the automobile exception to the warrant requirement

because the police lacked probable cause to search and the circumstances surrounding the roadside search were not so exigent that the police were unable to secure a search warrant. According to Anderson, the police could have acquired a warrant either immediately after receiving the first informant's tip or immediately after receiving the second. Further, Anderson contends that the search cannot be justified as incident to a valid arrest. A valid arrest requires probable cause, which Anderson claims the police did not have.

In addition, Anderson claims that the warrantless search of his vehicle at the police station house was similarly unlawful. He asserts that the automobile exception is unavailable because even if the police had probable cause to believe that the vehicle contained contraband, they had plenty of time to secure a search warrant.

The State counters that the actions of the police were constitutionally permissible. The State contends that the roadside search of Anderson's Cadillac falls within the automobile exception to the warrant requirement. The police had probable cause, argues the State, based on information acquired from two informants and independent police corroboration. Also, exigent circumstances existed because Anderson's car was movable, the occupants were alerted, and the evidence may have been destroyed had the police left to secure a search warrant. In addition, the State asserts, contrary to Anderson's contentions, the police did not have time to obtain a warrant, and the record so indicates. The State also claims that the police should not be judged by the standard for arrests because until the police discovered the marijuana during the roadside search of Anderson's vehicle, they merely detained Anderson and Abbott out of concern for their safety.

As to the search of Anderson's car at the police impound lot, the State argues that under federal search and seizure law, exigent circumstances are to be weighed only at the time the vehicle is initially seized. Because exigent circumstances existed when Anderson and his vehicle were seized, the State concludes, the station house search and resulting seizure of methamphetamine should be upheld.

## II. STANDARD OF REVIEW

 We review the factual findings underlying the trial court's decision under the clearly erroneous standard. *State v. Brown*, 853 P.2d 851, 854 (Utah 1992). This court will find that clear error exists only if the factual findings made by the trial court are not adequately supported by the record. *State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994). However, this court reviews the trial court's conclusions of law based on such facts under a correctness standard, according no deference to the trial court's legal conclusions. *Pena*, 869 P.2d at 936; *accord State v. Deli*, 861 P.2d 431, 433 (Utah 1993); *State v. Ramirez*, 817 P.2d 774, 782 (Utah 1991).

## III. ANALYSIS

### A. The Initial Detention

Anderson's first argument is that before the police obtained any incriminating evidence from his Cadillac or from Abbott, the police arrested him without probable cause in violation of statutory and constitutional strictures.[3] We disagree. Under section 77–7–2(2) of the Utah Code, a police officer may make a warrantless arrest "when he has reasonable cause to believe a felony has been committed and has reasonable cause to believe that the person arrested has committed it." In addressing the requirement of probable cause to arrest without a warrant, this court has stated, " 'The determination should be made on an objective standard: whether from the facts known to the officer, and the inferences which fairly might be drawn therefrom, a reasonable and prudent person

---

**3.** While Anderson's argument under this issue is based on three separate underpinnings—the Utah Code, article I, section 14 of the Utah Constitution, and the Fourth Amendment to the United States Constitution made applicable to the states through the Fourteenth Amendment— he has not differentiated among them. No argu-

ment has been made as to why, if we were to uphold the arrest under the Utah Code, the result would be different under either the Utah or the federal constitution. We will therefore treat the contention as a single argument with three legal bases rather than as three separate arguments. *State v. Lee*, 863 P.2d 49, 53 (Utah Ct.App.1993).

in his position would be justified in believing that the suspect had committed the offense.'" *State v. Cole,* 674 P.2d 119, 125 (Utah 1983) (quoting *State v. Hatcher,* 27 Utah 2d 318, 320, 495 P.2d 1259, 1260 (1972) (footnote omitted)). The officer performing his duties "is not required to meet any such standard of perfection as to demand an absolutely certain judgment before he may act." *State v. Eastmond,* 28 Utah 2d 129, 132, 499 P.2d 276, 278 (1972) (footnote omitted).

■ In this case, the purported probable cause is based on tips from two informants and independent corroboration by the police. We must examine the "totality of the circumstances" to determine whether the informants' tips, together with police observations, provided probable cause to arrest Anderson. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). This inquiry involves "a practical, common-sense decision whether, given all the circumstances ..., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.; accord State v. Hansen,* 732 P.2d 127, 130 (Utah 1987).

In the present case, the police received information from informant Fullmer on the day before the encounter that Anderson would be transporting narcotics. The trial court found that Fullmer, Anderson's former live-in girlfriend, had a strong basis to know about Anderson's smuggling activities. Moreover, Fullmer's report can be credited by the quantum of details she included. *See State v. Bailey,* 675 P.2d 1203, 1206 (Utah 1984) ("[T]he reliability of the informant's statement was 'boosted by the detail with which the informant described his personal observation[s]....'" (quoting *State v. Romero,* 660 P.2d 715, 719 (Utah 1983))). Fullmer reported (1) that Anderson would be traveling with a companion; (2) the name of Anderson's companion; (3) the make of the vehicle in which Anderson would be traveling; (4) the route Anderson would be traveling; (5) the date on which Anderson would arrive in Millard County; and (6) the time of day at which Anderson would arrive.

Moreover, although the police expressed some question of Fullmer's veracity due to a bias she may have harbored toward her ex-paramour, those doubts were resolved when the police received the same information the next day from an independent source. This informant told Deputy Roper that Anderson and Abbott would be transporting methamphetamine in a Cadillac heading north on highway 257 and would arrive in Millard County on the afternoon of May 10. In short, a second, independent source delivered the same information related by Fullmer.

In addition, the police verified almost every detail of the informants' accounts. Utah law regards an informant's tip more credible when police confirm significant facts. *State v. Anderson,* 701 P.2d 1099, 1102 (Utah 1985). Before Trooper Nielsen ordered Anderson's vehicle to the roadside, the officers had personally verified every aspect of the informants' reports except whether Anderson and Abbott were actually transporting methamphetamine obtained from Las Vegas. With this level of corroboration, the police could justifiably conclude that the rest of the reports would also be true. We hold, therefore, that when Anderson and Abbott were directed to stop, the officers had sufficient cause to arrest.

Our holding is supported by the United States Supreme Court's ruling in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), *overruled on other grounds, United States v. Chadwick,* 433 U.S. 1, 8, 97 S.Ct. 2476, 2481–82, 53 L.Ed.2d 538 (1977). In that case, a regular informant reported to a federal narcotics agent that James Draper, the petitioner, was selling narcotics. *Id.,* 358 U.S. at 309, 79 S.Ct. at 331. The informant reported that on September 6, Draper had left for Chicago by train and he would return to Denver on the morning of September 8 or 9. The informant also gave a detailed physical description of Draper, his apparel, his luggage, and his manner of walking rapidly. *Id.* Although Draper was not found on September 8, he was arrested on sight the next morning, conforming to the detailed physical description given by the informant. *Id.* at 310, 79 S.Ct. at 331. After the arrest, the police

found heroin on Draper, which he later sought to suppress, claiming that the police lacked reasonable cause to arrest. *Id.* at 310–11, 79 S.Ct. at 331–32.

The United States Supreme Court upheld the arrest, determining that the police had adequate cause. *Id.* at 314, 79 S.Ct. at 333. In support of its holding, the Court relied upon the abundance of detail recited by the informant and the fact that the agent "personally verified every facet of the information ... except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag." *Id.* at 313, 79 S.Ct. at 333. The Court then concluded that "surely, with every other bit of [the informant's] information being thus personally verified, [the agent] had 'reasonable grounds' to believe that the remaining unverified bit of [the informant's] information— that Draper would have the heroin with him—was likewise true." *Id.; see also McCray v. Illinois,* 386 U.S. 300, 304, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62 (1967) (holding that where regular informant reported that defendant was selling narcotics and gave defendant's location, and police verified defendant's location and observed defendant briefly meet with two people, "there [could] be no doubt ... that there was probable cause" to arrest defendant); *United States v. Skowronski,* 827 F.2d 1414, 1417 (10th Cir. 1987) (holding that police had probable cause to arrest where informant gave detailed information concerning defendant's marijuana trafficking and all of the information was repeatedly verified by police except whether narcotics were exchanged); *United States v. Reiner Ramos,* 818 F.2d 1392, 1395 (8th Cir. 1987) (holding that police had probable cause to arrest where two informants gave corroborating, detailed information about a drug operation and police verified such facts as defendant's physical description, the name of the hotel in which defendant stayed, the fact that defendant would be traveling with a female companion, and that defendant made quick turnaround airline flights); *United States v. De Los Santos,* 810 F.2d 1326, 1336 (5th Cir.1987), *cert. denied,* 484 U.S. 978, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987) (holding that police had probable cause to arrest defendant who had dealt heroin on previous occasions where regular informant told police that defendant was storing drugs at a certain location and would retrieve them the next day at a certain time, and police observed defendant, in the area during the time reported by the informant, enter and quickly exit residence); *State v. Rocha,* 600 P.2d 543, 545 (Utah 1979) (holding that police had probable cause to arrest where three informants reported defendant was selling heroin, the location of the sales, and the manner in which the sales were made and where police surveillance of the location revealed that known and suspected heroin users briefly visited the location).

The police in this case were entitled to draw a similar conclusion. Like the agent in *Draper,* the Millard County officers verified every aspect of their informants' detailed reports except whether Anderson and Abbott were actually transporting methamphetamine. Anderson's Cadillac was indeed at the location during the time reported by the informants. At that point, the officers had reasonable cause to believe that Anderson and Abbott were trafficking contraband obtained in Las Vegas. Thus, even if Anderson's and Abbott's detention prior to the search of Anderson's Cadillac amounted to an arrest, the arrest was justified by probable cause.[4]

### B. The Roadside Search

Anderson questions the propriety of the search of his Cadillac immediately after his detention. He argues that the warrantless search does not comport with constitutional mandates, particularly, article I, section 14 of the Utah Constitution as construed in *State v. Larocco,* 794 P.2d 460 (Utah 1990).[5]

---

4. Because of our disposition of this issue, we need not address the State's contention that the police did not arrest Anderson before searching his Cadillac but merely secured and detained him out of concern for their safety.

5. The *Larocco* plurality opinion was authored by Justice Durham, who was joined by Chief Justice, then Justice, Zimmerman. Associate Chief Justice, then Justice, Stewart concurred in the result. Justice, then Associate Chief Justice, Howe, joined by Chief Justice Hall, dissented. Thus,

As an initial matter, we must determine the appropriate standard by which to judge the search. The State argues that we need only analyze the search under federal constitutional law and we should jettison any independent analysis of the police action under the Utah Constitution. In *State v. Watts,* 750 P.2d 1219 (Utah 1988), this court stated that Utah courts should depart from federal search and seizure law to "insulat[e] this state's citizens from the vagaries of inconsistent interpretations given to the fourth amendment by the federal courts." *Id.* at 1221 n. 8. In *Larocco,* two members of this court found the federal automobile exception to the Fourth Amendment's warrant requirement sufficiently incongruent to justify a simplification of the search and seizure rules and a nominal departure from federal principles. *Id.* at 469–70. However, the State contends that a subsequent 1991 United States Supreme Court decision, *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), cured any confusion surrounding the automobile warrant exception and, therefore, independent state constitutional analysis is no longer necessary.

However, on appeal, Anderson has requested a review of the trial court's suppression ruling under the Utah Constitution. Denying that review would be tantamount to a judicial repeal of article I, section 14, a prerogative which does not reside with this court. *See* Utah Const. art. XXIII, § 1.

Although we are obligated to provide a state law review, such an independent analysis is not necessarily a *different* analysis. Indeed, we have endeavored toward uniformity in the application of the search and seizure requirements of the state and federal

constitutions, particularly since the respective provisions are practically identical.[6] *See Watts,* 750 P.2d at 1221. An opposite approach could lead to unfavorable results. As Justice Stewart has aptly explained, "One untoward consequence of such an approach is to impose two different and possibly conflicting constitutional standards on law enforcement officers with the unintended effect of diminishing, not increasing, protection of rights of privacy." *State v. Poole,* 871 P.2d 531, 536 (Utah 1994) (Stewart, Assoc. C.J., concurring). For these reasons, Utah courts should construe article I, section 14 in a manner similar to constructions of the Fourth Amendment except in compelling circumstances. *See State v. Harmon,* 910 P.2d 1196, 1205–06 (Utah 1995); *Watts,* 750 P.2d at 1221 & n. 8.

The opinions of Chief Justice Zimmerman and Justice Durham disregard this principle and, in doing so, misconstrue its import. Justice Durham's opinion describes our holding as "contain[ing] no independent statement of state law." Nothing could be further from the truth. We expressly rejected an approach based solely on federal law two paragraphs back. What the concurring and dissenting opinions fail to recognize is that under Utah law, part of an article I, section 14 analysis is an examination of precedent interpreting and applying the Fourth Amendment. *See Harmon,* 910 P.2d at 1205–06; *Watts,* 750 P.2d at 1221 & n. 8. This precedent is certainly not controlling if interpretations of the Fourth Amendment are inconsistent or confused. *See Harmon,* 910 P.2d at 1205–06; *Watts,* 750 P.2d at 1221 & n. 8.

---

Anderson's reliance on the case should be tempered by its plurality status. The plurality opinion in *Larocco* represents the views of only two justices of this court and is therefore not the law of this state. *Sims v. State Tax Comm'n,* 841 P.2d 6, 15 (Utah 1992) (Stewart, J., concurring in the result).

6. The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. Article I, section 14 of the Utah Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.

Utah Const. art. I, § 14.

Indeed, this is precisely the analytical process recognized and applied in the *Larocco* plurality opinion, which Justice Durham authored and Chief Justice Zimmerman joined. The plurality's sole basis for its "simplif[ication of] the search and seizure rules" under article I, section 14 was the apparent confused state of federal law. *See Larocco,* 794 P.2d at 465–69. According to the plurality, a distinctive interpretation of article I, section 14 was proper, "since 'choosing to give the Utah Constitution a somewhat different construction may prove to be an appropriate method for insulating this state's citizens from the vagaries of inconsistent interpretations given to the fourth amendment.' " *Id.* at 465 (quoting *Watts,* 750 P.2d at 1221 n. 8). Furthermore, in arriving at its distinctive construction of article I, section 14, the plurality went to great lengths to describe federal interpretations of the Fourth Amendment as "the source of much confusion among judges, lawyers, and police." *Id.* at 466–70. In short, to reach their desired result, a distinctive construction of article I, section 14, the plurality members did not "do the work" they now demand, an "independent, separate analysis of our constitutional privilege"; instead, the plurality members applied the very analytical process they now repudiate.

In this case, we see no need to accord article I, section 14 meaning distinct from its federal counterpart. The State argues that the roadside search falls within the automobile exception under federal case law. Anderson counters that the search contravened Utah case law, specifically, *Larocco.* An examination of applicable state and federal constitutional law reveals that the respective requirements for a warrantless automobile search, such as the one at issue here, are in harmony.

■ In *Carroll v. United States,* 267 U.S. 132, 151, 45 S.Ct. 280, 284, 69 L.Ed. 543 (1925), the United States Supreme Court established an exception to the warrant requirement for moving vehicles, recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search

of a ship, motorboat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

*Id.* at 153, 45 S.Ct. at 285. The Court, therefore, held that a warrantless search of an automobile based upon both probable cause and the urgency effected by the vehicle's mobility did not contravene the warrant requirement of the Fourth Amendment. *Id.* at 158–59, 45 S.Ct. at 287.

Moreover, in 1991, the United States Supreme Court reaffirmed the requirements of probable cause and exigent circumstances as a precondition to a valid warrantless search of an automobile. *Acevedo,* 500 U.S. at 569, 111 S.Ct. at 1985–86. Thus, for the roadside search of Anderson's Cadillac to satisfy the Fourth Amendment, both probable cause and exigent circumstances must have existed.

According to applicable Utah case law construing article I, section 14, the plurality opinion in *Larocco,* the Utah Constitution requires nothing more. Prior to *Larocco,* the Utah Supreme Court had always looked to federal case law to serve as a guide in search and seizure cases. *See State v. Dunn,* 850 P.2d 1201, 1216 n. 11 (Utah 1993); *Larocco,* 794 P.2d at 469. In *Larocco,* two justices of this court turned to article I, section 14 to decide whether a vehicle search is conducted when the police open a car door to inspect the vehicle identification number. *Larocco,* 794 P.2d at 465–66. The plurality departed from federal case law due to inconsistencies in federal treatment of searches and seizures of automobiles. The plurality established a difference under the Utah Constitution between searches of movable vehicles and other types of searches which mirrored the distinction originating under the United States Constitution. *See id.* at 469–70. Indeed, the *Larocco* plurality expressly endorsed the rule and its rationale as articulated by the *Carroll* Court. *Id.* at 467–68, 469–70. Thus, under *Larocco,* article I, section 14 will excuse the warrantless roadside search if it was premised upon probable cause and exigent circumstances.

The Fourth Amendment, when confronted with facts relevant to this issue, requires that such a search be premised on probable cause and exigent circumstances. *Acevedo,* 500 U.S. at 569, 111 S.Ct. at 1985–86. Two members of this court have held that the Utah Constitution requires the same. *Larocco,* 794 P.2d at 469–70. Because this portion of *Larocco* coincides with federal law, we agree with those who joined the *Larocco* plurality that article I, section 14 of the Utah Constitution requires that warrantless searches of automobiles be justified by a showing of probable cause and exigent circumstances.

█ Having determined what the Utah and United States Constitutions require, we must determine if the roadside search of Anderson's automobile comports with those requirements. As discussed in part II.A. above, before stopping Anderson, the police had probable cause to arrest him for possession of a controlled substance. By implication, the officers had probable cause to believe that the vehicle in which Anderson was found contained controlled substances. Because the police had "reasonable cause to believe" that Anderson was unlawfully transporting narcotics in his Cadillac, they certainly had reasonable cause to believe that his Cadillac contained illegal narcotics.

Also, the search was necessitated by exigent circumstances. This court has ruled that exigent circumstances exist when " 'the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.' " *State v. Limb,* 581 P.2d 142, 144 (Utah 1978) (quoting *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970)). In addition, exigent circumstances exist when the safety of police officers is threatened. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969); *Larocco,* 794 P.2d at 470. When the officers stopped Anderson's vehicle, the car was movable, the occupants were alerted to the police presence, and had the police left to obtain a warrant, Anderson could have disposed of the contraband. Furthermore, the police considered the roadside search neces-

sary to prevent harm to the officers; had the officers left Anderson to secure a search warrant, they likely would have been forced to execute the warrant at Anderson's house, where, as the officers were personally aware, he maintained an assortment of firearms.

Furthermore, we find Anderson's contention that the police could have obtained a warrant without merit. First, contrary to Anderson's contentions, the record shows that the officers did not have time to obtain a warrant. Detective Dekker received the second informant's report at 1:30 on the afternoon that Anderson was to return. Although the detective immediately requested that the county attorney's office obtain a search warrant, Anderson arrived in Millard County before the warrant could be secured. Second, the officers could not avail themselves of the telephonic warrant procedure because, as the trial court found, the officers lacked telephone access to a magistrate. *See State v. Morck,* 821 P.2d 1190, 1194 n. 1 (Utah Ct. App.1991).

In any event, the police were not required to seek a search warrant at the exact moment they acquired the minimum amount of evidence to meet the probable cause requirement. Rather, the officers were entitled to corroborate the informants' reports, including the information that Anderson would return to Millard County on the afternoon of May 10. Holding otherwise would penalize police for thorough investigations and impede efforts to comply with constitutional mandates.[7]

### C. The Station House Search

The final issue on appeal is whether the second search of Anderson's car conforms to state constitutional directives. This search occurred at a secure impound lot the day after Anderson was arrested.

█ The State contends that we should uphold the search by following federal precedent. As construed by the United States Supreme Court, exigent circumstances are to be weighed only at the time the vehicle is seized by police. *Texas v. White,* 423 U.S.

---

7. The issue of whether Anderson had standing to raise the privacy rights of Abbott was not raised by either party and therefore is beyond the scope of our consideration.

67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981–82, 26 L.Ed.2d 419 (1970). In these cases, the Court reasoned that because the police could have searched the vehicle immediately after the arrest, "there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." *Chambers,* 399 U.S. at 52, 90 S.Ct. at 1981 (footnote omitted); *see White,* 423 U.S. at 68, 96 S.Ct. at 305. Also, the Court noted that towing the vehicle to the station house could lessen the danger to police officers and might facilitate the search. *Chambers,* 399 U.S. at 52 n. 10, 90 S.Ct. at 1981 n. 10. Thus, as long as police had probable cause to search and exigent circumstances existed at the time the automobile was stopped and seized, a warrantless search conducted sometime later at a secure location would not offend the Fourth Amendment.

According to Anderson, however, the search was unlawful under Utah law. Anderson relies on *State v. Larocco,* 794 P.2d 460 (Utah 1990) (plurality), to the extent it takes issue with federal case law such as *Chambers* that upheld vehicle searches where the mobility element was apparently lacking. Speaking about *Chambers,* the *Larocco* plurality remonstrated, "The Court seemed to ignore the mobility factor outlined in *Carroll* as a justification for the automobile exception." *Id.* at 468.

Contrary to Anderson's argument, the *Larocco* holding is not inconsistent with *Chambers.* In *Larocco,* the plurality concluded that although the police had probable cause to believe that a vehicle under investigation was stolen, a warrantless inspection of the vehicle identification number was not prompted by exigent circumstances. *Id.* at 470. The plurality reasoned:

> The officers here could have easily obtained a warrant for the search of the car. There was no indication that the car would not be available, as defendant had no idea that either he or the car was under investigation. In fact, approximately a week passed between the officer's first observa-

tion of the car and the search, and the car's location had not changed.

*Id.* at 470–71. In *Larocco,* at no time did exigent circumstances exist to excuse the warrantless search. A search under *Chambers,* however, must be premised upon exigent circumstances even though such urgency need exist only at the time of the vehicle's seizure.

Following this court's preference to interpret article I, section 14 in accord with the Fourth Amendment, *see State v. Watts,* 750 P.2d 1219, 1221 (Utah 1988), we adopt the rule articulated in *Chambers* and its progeny. *Chambers* is not so vague and inconsistent with other federal cases under the Fourth Amendment that we should give the Utah Constitution a different construction. *See id.* at 1221 n. 8. *Chambers* does not signal an abandonment of the exigent circumstances prong of the automobile exception. Rather, *Chambers* rules that exigent circumstances must exist but they need exist only at the time the vehicle is initially seized. *California v. Acevedo,* 500 U.S. 565, 569, 111 S.Ct. 1982, 1985–86, 114 L.Ed.2d 619 (1991).

Applying the *Chambers* rule, we find that the police acted within constitutional bounds. As stated in part III.B. above, the police had probable cause to search the vehicle when they stopped Anderson and Abbott on highway 257. This probable cause remained on the following day. " 'The probable-cause factor' that developed on the scene 'still obtained at the station house.' " *White,* 423 U.S. at 68, 96 S.Ct. at 305 (quoting *Chambers,* 399 U.S. at 52, 90 S.Ct. at 1981). In fact, the officers' belief that the Cadillac contained contraband strengthened after they received information from Abbott that methamphetamine was hidden under the Cadillac's carpet. In addition, exigent circumstances existed at the relevant time. As discussed in part III.B., the roadside search of Anderson's Cadillac was compelled by exigent circumstances. Therefore, the station house search of Anderson's vehicle is consistent with state and federal constitutional protections.

## IV. CONCLUSION

We hold that the arrest of Anderson and the two subsequent searches of his vehicle conformed to both the Utah and United States Constitutions. Accordingly, we affirm the trial court's order denying Anderson's motion to suppress.

HOWE, J., concurs in RUSSON's, J., opinion.

ZIMMERMAN, Chief Justice, concurring in the result:

As a preliminary matter, and on behalf of Justices Stewart and Durham, I must point out that the lead opinion's directive to Utah courts to construe article I, section 14 of the Utah Constitution in a manner similar to constructions of the Fourth Amendment except in compelling circumstances is not supported by a majority of this court and is not Utah law.

Turning to the merits, I agree with the lead opinion's conclusion that Anderson's arrest and the two subsequent searches of his vehicle did not violate constitutional or statutory mandates. I write separately, however, to elaborate on Justice Durham's criticism of the lead opinion's methodology in reaching its result, criticism with which I strongly agree.

In its discussion of the roadside search of Anderson's automobile, the lead opinion needlessly reexamines federal precedent since our plurality opinion in *State v. Larocco,* 794 P.2d 460 (Utah 1990). The rule endorsed in *Larocco*—that a warrantless automobile search must be premised on probable cause and exigent circumstances—is identical to the rule "newly found" by the lead opinion and applied in the instant case. If anything, that sequence of events supports what the lead opinion purports to attack, namely, the beneficial effect of undertaking an independent analysis of Utah constitutional language. Simply put, the plurality's willingness in *Larocco* to independently analyze the Utah Constitution prevented the confusion surrounding the automobile warrant exception that existed in federal courts from proliferating here in Utah. The fact that the United States Supreme Court subsequently reached the same rule as articulated in *Larocco* in no way merits abandoning an independent state constitutional analysis on the ground that it is not necessary except in "the most compelling circumstances." Our prior cases do not establish such a rule.

As to the lead opinion's extension of the automobile warrant exception to the search of Anderson's car at the station house, I agree that *Larocco* is not controlling because in *Larocco,* there was no evidence that the police acted under exigent circumstances *at any time.* I do, however, fault the lead opinion for blindly adhering to federal precedent on this issue without even articulating the policy reasons for its holding that exigent circumstances need exist only at the initial seizure of the automobile. Particularly in an area such as search and seizure law where, frequently, "the facts to which the legal rule is to be applied are so complex and varying," *State v. Pena,* 869 P.2d 932, 939 (Utah 1994), an articulation of the policy bases for a new rule imposed on our trial courts is crucial so that they have some guidance in how to apply it when confronted with slightly different facts than those of the present case. The lead opinion's omission is precisely traceable to its failure to "do the work," as Justice Durham writes. I therefore agree with her on the meaning of Utah's article I, section 14 and dissent from any implication in the lead opinion that this court must follow in lockstep with whatever the United States Supreme Court finds in the similarly worded Fourth Amendment.

STEWART, Justice, concurring in the result:

I concur generally in the lead opinion. While I have taken the position that Utah ought not depart from federal search and seizure law in construing article I, section 14 simply because of some inconsistency in that law, or minor disagreement with it, I am not inclined to adopt the "compelling circumstances" standard proposed by Justice Russon. Thus, I think it important to discuss the nature of the duty of this Court to construe provisions of this state's Declaration of Rights that are similar or identical to provisions in the United States Bill of Rights.

If this Court were to view its constitutional duty to construe the provisions in the Utah Declaration of Rights in the exact same manner as the United States Supreme Court construes analogous provisions in the Bill of Rights, we would violate the spirit and intended effect of Utah constitutional law and policy as established by the framers of the Utah Constitution. Although we have concededly followed federal law in many instances, that should not be surprising given the fact that the same historical foundations underlie most of the parallel provisions in the two constitutions. To some extent, we have followed federal precedent because there are occasions when departing from that precedent would be counterproductive in securing constitutional liberties. Indeed, in the context of state search and seizure law as applied in routine traffic stops of vehicles, I have previously taken the position that this Court ought not embroider the margins of an already highly complicated area of the law by creating relatively insignificant departures from federal search and seizure law simply because some comparatively minor aspect of that law seems to be ill-founded or inconsistent with other federal law. Further complicating an already extremely intricate and complex area of the law would, in my view, not only have the adverse effect on law enforcement of compounding confusion in that area of the law but, more importantly, it would undermine the very liberty values that the search and seizure provisions of the Utah and federal constitutions are designed to protect. As I have earlier written, "[O]ne untoward consequence of such an approach is to impose two different and possibly conflicting constitutional standards on law enforcement officers with the unintended effect of diminishing, not increasing, protection for rights of privacy." *State v. Poole,* 871 P.2d 531, 536 (Utah 1994) (Stewart, J., concurring).

Nevertheless, that policy is subject to limitations within the area of search and seizure and certainly in other areas of the law guaranteeing personal liberties. The framers of the Utah Constitution necessarily intended that this Court should be both the ultimate and final arbiter of the meaning of the provisions in the Utah Declaration of Rights and the primary protector of individual liberties. That general principle pertaining to state protection of civil liberties was also the premise on which the framers of the United States Constitution acted. In 1895, when the Utah Constitution was adopted, none of the specific provisions in the federal Bill of Rights was deemed binding on the states. The Bill of Rights restricted only federal, not state, action. *Barron v. Mayor & City Council of Baltimore,* 32 U.S. (7 Pet.) 243, 8 L.Ed. 672 (1833); *see also Slaughter House Cases,* 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1872). The incorporation of various provisions of the Bill of Rights into the Due Process Clause of the Fourteenth Amendment so as to make them applicable to the states did not occur until several decades after the adoption of the Utah Constitution. Given that history, the framers of the Utah Constitution, like the framers of all other state constitutions, viewed their own state constitutional provisions as the sole source of constitutional protection for those individual liberties enshrined in state bills of rights and declarations of rights.[1]

Because the framers of the Utah Constitution modified certain provisions in the Bill of Rights before they were placed in the Utah Constitution, and even added certain provisions not found in the federal constitution, this Court should not be bound to construe Utah constitutional provisions in light of federal law, except in "the most compelling circumstances." Indeed, this Court has, on a number of occasions, construed state constitutional provisions differently than the United States Supreme Court has construed similar federal provisions. *See, e.g., State v. Thompson,* 810 P.2d 415, 418 (Utah 1991); *cf. Sims v. State Tax Comm'n,* 841 P.2d 6 (Utah 1992).[2]

---

1. It can hardly be denied that those state constitutional provisions purportedly protecting individual liberties were hollow promises to a very large degree during the nineteenth century and the first half of the twentieth century.

2. Justice Durham cites several Utah cases that depart from federal law, but in almost all instances the state constitutional provisions are different from their federal counterparts.

In short, this Court cannot legitimately abdicate its responsibility to construe state constitutional provisions to any other court, even the United States Supreme Court. Concededly, the provisions of our state constitution may not be construed in a more narrow fashion than analogous federal provisions in the federal Bill of Rights, but what the United States Supreme Court may decide in any case should not necessarily define the outer limit of the personal liberties and civil rights that the citizens of this state are entitled, and were intended, to enjoy.

DURHAM, Justice, concurring and dissenting:

I concur with the first paragraph of Justice Zimmerman's separate opinion. I also concur in the result reached by the lead opinion but cannot join the treatment of Utah constitutional questions contained in section III.B. The opinion purports to accept the principle that it is this court's obligation to undertake an independent analysis of article I, section 14. It then cites only federal law and early Utah cases that failed to delineate any independent Utah analysis. One result of this treatment is to render the lead opinion's holding presumptively dependent on federal law: it is reviewable by the United States Supreme Court, and it contains no independent statement of state law. *Michigan v. Long*, 463 U.S. 1032, 1038 n. 4, 103 S.Ct. 3469, 3475 n. 4, 77 L.Ed.2d 1201 (1983).

Undertaking an independent analysis of constitutional language and reaching a conclusion similar or identical to that reached by the United States Supreme Court—even borrowing persuasive analytic tools and language—is a far different thing from committing this court to move in lockstep with the federal court on search and seizure questions. We have not committed to do so in connection with other provisions and guarantees in our constitution, including, for example, uniform operation of the laws and equal protection, *Mountain Fuel Supply v. Salt Lake City Corp.*, 752 P.2d 884, 890 (Utah 1988); *Malan v. Lewis*, 693 P.2d 661, 670 (Utah 1984); freedom of speech and of the press, *West v. Thomson Newspapers*, 872 P.2d 999, 1018 (Utah 1994); free exercise and

establishment of religion, *Society of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 930 (Utah 1993); the right of self-representation, *State v. Lafferty*, 749 P.2d 1239, 1247 & n. 5 (Utah 1988); and the privilege against self-incrimination, *In re Criminal Investigation, 7th Dist. Ct. No. CS–1*, 754 P.2d 633, 645 & n. 14 (Utah 1988); *American Fork City v. Crosgrove*, 701 P.2d 1069, 1071–72 (Utah 1985). *American Fork City* provides a useful illustration of my point. In that case, we construed language in article I, section 12 which was similar but not identical to language found in the Fifth Amendment: "The accused shall not be compelled to give evidence against himself" as opposed to "nor shall be compelled in any criminal case to be a witness against himself." We undertook an extensive, independent analysis of the scope of the privilege as it was embodied in *our* constitution and concluded that it was testimonial in nature. *Id.* at 1072–73. That result, of course, also obtains under a federal analysis, but the fact that it did so was coincidental, not dispositive. *Id.* at 1073 n. 2. Likewise, in *In re Criminal Investigation*, 754 P.2d at 645, we undertook an independent, separate analysis of our constitutional privilege, with a parallel analysis of the Fifth Amendment, noting the shared common law roots of both. We specifically emphasized that our holding was "based independently on our state constitution," *id.* at 648 n. 16, and pointed out that the similarity of interpretation of the federal and state provisions was due solely to "the extent that the common law defines the privilege." *Id.* at 645. We further noted that "when contemporary questions outside the realm of the common law arise, differing federal and state sensitivities or policy objectives may result in different protections." *Id.* at 645 n. 14.

The lead opinion argues that uniformity in rules governing law enforcement practices is a superseding value that warrants a lockstep approach in search and seizure cases. While the practical impact of any constitutional construction may be a legitimate factor (see the discussion of public policy issues in *American Fork City* ) in this court's deliberations, it has never been the only value we honor in constitutional interpretation. In our federalist system, we tolerate countless instances of

dual regulation and differences in law, and the lead opinion has cited no convincing authority for the proposition that in this area of constitutional law, we must cede our interpretive function to the federal courts. That is not to say, of course, that we might, as we have in numerous cases, reach precisely the same result under a state analysis as we would under the federal, but it is to say that we should do the work. Therefore, when the lead opinion says, essentially, that Utah's search and seizure provisions mean whatever the United States Supreme Court says (now or in the future) the federal language means, I must disagree.

Furthermore, I note that the lead opinion misconstrues language in my opinion in *Larocco* and the court's opinion in *Watts*. Nothing in either opinion was intended to indicate that inconsistency and confusion in federal constitutional analysis are the only reasons we undertake independent state constitutional analysis. In both cases, it was offered as *a* reason to do so, but neither case stands for the proposition that such circumstances constitute a *sine qua non* for fulfilling our obligation to construe the meaning of Utah's constitution. The numerous cases cited above make it perfectly clear that no such contingent relationship between Utah's constitution and the federal has been conclusively adopted by this court. In my view, it should never be.